**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

Brenda Corson


        v.                                Civil No. 04-cv-357-SM

Social Security Administration,
Commissioner

**REPORT AND RECOMMENDATION**


        Pursuant to 42 U.S.C. § 405(g), Plaintiff Brenda Corson
moves to reverse the Commissioner of Social Security's decision
denying her application for disability insurance benefits ("DIB")
under Title II of the Social Security Act (the "Act").  The
Commissioner cross moves for an order affirming her decision.
This matter was referred to me to prepare a report and
recommendation in accordance with this court's standing
administrative order (document no. 2).  For the reasons set forth
below, I recommend that the Commissioner's decision be reversed,
and that this matter be remanded for further proceedings.

Factual Background

I.    Procedural History

        Plaintiff applied for DIB on August 5, 2002.  Tr. 125-127.
She claimed that she had been unable to work since July 22, 1994

because of back pain and anxiety.  Tr. 125, 135.  When Plaintiff submitted her application, she was 52 years old and had past work experience as a housekeeper and laundry worker.  Tr. 125, 136.

Plaintiff's claim was denied initially.  Tr. 93-96.  She was permitted to request a hearing without seeking reconsideration, which she did.  Tr. 94, 97.  A hearing was convened on May 14, 2003 before Administrative Law Judge ("ALJ") Ruth Kleinfeld.  Tr. 33.  The hearing was continued to allow Plaintiff to secure legal representation.  Tr. 40-50.  On September 18, 2003, the hearing re-convened with Plaintiff represented by counsel.  Tr. 51-52.

In a decision dated April 30, 2004, the ALJ determined that Plaintiff was not disabled within the meaning of the Act.  Tr. 12-23.  Plaintiff sought Appeals Council review of the decision, Tr. 9-11, but the Appeals Council affirmed the decision rendering the ALJ's decision the final agency determination.  Tr. 6-8.  Plaintiff then filed her complaint seeking judicial review.

II.  Background Facts

Pursuant to Local Rule 9.1(d), the parties have submitted a Joint Statement of Material Facts, which are part of the court's record (document no. 9) and adopted herein.  The facts that are relevant to this report and recommendation are cited in the body

of the discussion.

Standard of Review

I.   Properly Supported Findings Entitled to Deference

After a final decision by the Commissioner denying a
claimant's application for benefits, and upon a claimant's timely
request, a district court is authorized to review the
administrative record and enter a judgment affirming, modifying,
or reversing the Commissioner's decision.  See 42 U.S.C. §
405(g).  The court's review is limited in scope, however, and the
Commissioner's factual findings are conclusive if they are
supported by substantial evidence.  See id.; Irlanda Ortiz v.
Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991).  The
Commissioner is responsible for determining credibility issues,
drawing inferences from the record evidence, and resolving
conflicting evidence.  Irlanda Ortiz, 955 F.2d at 769; Frustaglia
v. Sec'y of HHS, 829 F.2d 192, 195 (1st Cir. 1987).  Therefore,
the court must "'uphold the [Commissioner's] findings . . . if a
reasonable mind, reviewing the evidence in the record as a whole,
could accept it as adequate to support [the Commissioner's]
conclusion.'"  Irlanda Ortiz, 955 F.2d at 769 (quoting Rodriguez
v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)); see also,

Tsarelka v. Sec'y of HHS, 842 F.2d 529, 535 (1st Cir. 1988) ("[W]e must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence.").

The ALJ's findings of fact are conclusive when supported by substantial evidence, but not if they are "derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (citations omitted). If the Commissioner has misapplied the law or has failed to provide a fair hearing, deference to the Commissioner's decision is not appropriate, and remand for further development of the record may be necessary. See Carroll v. Sec'y of HHS, 705 F.2d 638, 644 (2d Cir. 1983); see also, Slessinger v. Sec'y of HHS, 835 F.2d 937, 939 (1st Cir. 1987) ("The [Commissioner's] conclusions of law are reviewable by this court.").

II. Parties' Respective Burdens

An individual seeking DIB is disabled within the meaning of the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can reasonably be expected to last for

a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A; 42 U.S.C. § 1382c(a)(3). The claimant has the initial burden to establish the existence of a disabling impairment. See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Sec'y of HHS, 944 F.2d 1, 5 (1st Cir. 1991). To satisfy that burden, the claimant must prove that his impairment prevents him from performing his previous type of work. See Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985).

In assessing a disability claim, the Commissioner considers objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective assertions of pain and disability, as supported by the testimony of the claimant and other witnesses; and (3) the claimant's educational background, age, and work experience. Mandziej v. Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Avery v. Sec'y of HHS, 797 F.2d 19, 23 (1st Cir. 1986)). The Commissioner applies a five-step sequential evaluation process to determine whether a claimant is disabled. Where a claimant has shown an inability to perform his previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that he can perform. See Vazquez v. Sec'y of HHS, 683 F.2d 1, 2 (1st Cir. 1982). If

the Commissioner shows that considering the claimant's age,
education, work experience, and impairments there are jobs that
the claimant can perform, the overall burden to demonstrate
disability remains with the claimant.  Hernandez v. Weinberger,
493 F.2d 1120, 1123 (1st Cir. 1974); Benko v. Schweiker, 551 F.
Supp. 698, 701 (D.N.H. 1982).

Applying these principles, I review the Plaintiff's motion
to reverse and the Commissioner's motion to affirm the
determination that the Plaintiff is not disabled.

Discussion

I.   The ALJ's Findings

The ALJ found that Plaintiff met the earning requirements
for eligibility for DIB through September 1998.  Tr. 23, Finding
No. 1.  She was found to have not engaged in substantial gainful
employment since July 22, 1994.  Id., Finding No. 2.  The ALJ
found that "[t]he medical evidence establishes that the claimant
has a medically determinable impairment of anxiety (20 CFR
404.1508)."  Id., Finding No. 3.  But the ALJ found that "[t]he
medical evidence establishes that the claimant's anxiety is not a
severe impairment (20 CFR 404.1521)."  Id., Finding No. 4.  The
ALJ found that "claimant's testimony and allegations regarding

subjective complaints, including pain, are not credible." Id.,
Finding No. 5.  Consequently, the ALJ held that "the claimant has
not been under a 'disability'" as defined in the Act at any time
through the date of her decision.  Id., Finding No. 6.

II.   Plaintiff's Arguments for Reversal

      A.   The ALJ Misapplied The Law In Finding That
           Plaintiff Did Not Have Any Severe Impairment

      Plaintiff argues that the ALJ erred as a matter of law in
failing to apply the severity standard recognized by the First
Circuit.  She argues that had the ALJ properly applied that
standard, the ALJ would have found that Plaintiff's anxiety and
back impairment were more than "slight abnormalities" when her
insured status for DIB expired.  In response to this argument,
the Commissioner neither contests that Plaintiff had only a de
minimis burden at Step 2, nor that the ALJ used the regulatory
language of "significant limitations" in the discussion of
impairment severity in her decision.  The Commissioner argues,
however, that the Plaintiff simply failed to meet her burden.

      In concluding that Plaintiff was not disabled under the Act,
the ALJ was required to employ the mandatory five-step sequential
evaluation process.  That evaluation requires the SSA to
determine: (1) whether the claimant is presently engaged in

                              7

substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from performing past relevant work; and (5) whether the impairment prevents the claimant from doing any other work.  See 20 C.F.R. § 404.1520.

At Step 2 of the five-step sequential inquiry, the SSA must determine whether the claimant has a medically severe impairment or combination of impairments.  See 20 C.F.R. § 404.1520(a)(4)(ii).  In McDonald v. Sec'y of HHS, 795 F.2d 1118, 1124 (1st Cir. 1986), the court noted that the Step 2 severity requirement placed only a de minimis burden on the claimant, and is designed to screen out groundless claims.  The court found that:

> a finding of "non-severe" is only to be made where "medical evidence establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered . . . ."  The impairment must be such that a finding of non-disability would necessarily result even if the vocational factors were considered.

Id. at 1124-25 (quoting Social Security Ruling ("SSR") 85-28).  The court found that the agency's interpretation of the Step 2

requirement in SSR 85-28 put the agency's regulation in accord

with the court decisions that had considered the validity of the

regulation.  Id. at 1125.  The court further found that it was

absolutely clear that the severity regulation is interpreted as

"no more than a de minimis policy that will not result in the

denial of benefits to an applicant who either cannot perform his

or her own past work, or cannot perform other substantial gainful

activity."  Id.

     The SSA restated its policy for determining whether a

medically determinable impairment is severe in SSR 96-3P,

available at 1996 WL 374181 (S.S.A.).  That regulation provides

that:

> At step 2 of the sequential evaluation process, an
> impairment or combination of impairments is considered
> "severe" if it significantly limits an individual's
> physical or mental abilities to do basic work
> activities; an impairment(s) that is "not severe" must
> be a slight abnormality (or combination of slight
> abnormalities) that has not more than a minimal effect
> on the ability to do basic work activities.

SSR 96-3P, 1996 WL 374181 at *1 (emphasis added).

     In the instant case, the ALJ defined a severe impairment as

an impairment that "must significantly limit the ability to

perform basic work activities."  Tr. 16.  But it appears that in

evaluating the evidence the ALJ did not consider whether

claimant's alleged impairments were only "slight abnormalities" that had no more than "a minimal effect" on her ability to do basic work activities.  See Tr. 18, 20.  Specifically, in evaluating the evidence pertaining to Plaintiff's anxiety, the ALJ stated that during the period from July 1994 through July 2002, she "did not have complaints . . . of such significant signs or symptoms and the medical evidence of record does not support the existence of a severe impairment."  Tr. 18.  With regard to Plaintiff's alleged back impairment, the ALJ found that while her "allegation of back pain is credible," and existed prior to her alleged onset date, "there are no corroborative objective findings to support significant limitations of one or more basic work activities."  Tr. 20.  At no point in her decision did the ALJ find that Plaintiff's alleged impairments were merely "a slight abnormality (or combination of abnormalities)" that had no more than a minimal effect on the ability to do basic work activities, as required by McDonald and SSR 96-3P.

      The First Circuit found appropriate for remand a case where it was unclear whether the agency used the proper standard for determining that a claimant's impairments were "not severe."  See

Fernandez v. Sec'y of HHS, 826 F.2d 164, 167 (1st Cir. 1987)
(finding that a denial of benefits was not supported by
substantial evidence where it was not clear that the ALJ and
consulting physicians used the words "not severe" to mean that
the claimant's liver disease was "slight" with no more than a
"minimal effect" on ability to do basic work activities); see
also Loza v. Apfel, 219 F.3d 378, 392 (5th Cir. 2000) (ordering a
remand in a case where the court found that an ALJ erred as a
matter of law in determining that a claimant's mental impairment
was not severe because the ALJ did not apply the correct standard
to the severity requirement).

Furthermore, in finding that the Plaintiff's mental
impairment was not severe, the ALJ relied heavily on the
Plaintiff's lack of medical treatment while ignoring the evidence
in the record that explained the lack of treatment.  This
contradicts SSR 96-7p, available at 1996 WL 374186 *7 (S.S.A.),
which states that "the adjudicator must not draw any inferences
about an individual's symptoms and their functional effects from
a failure to seek or pursue regular medical treatment without
first considering any explanations that the individual may

11

provide, or other information in the case record."[1]  While the ALJ found that the Plaintiff did not make complaints of significant signs or symptoms of a severe mental impairment to her treating sources from July 1994 to July 2002, she did not address Plaintiff's testimony at the administrative hearing that she felt "very scared to tell" her treating physician about her mental illness.  Tr. 69.  That testimony was consistent with the note from Plaintiff's visit to her treating source on July 9, 2002.  The record indicates that on that date:

> Patient is seen today in routine follow-up of her chronic depression and anxiety.  Patient does report she has been having some paranoid episodes.  Feels that somebody is hurting her.  Is also admitting auditory hallucinations.  Feels that she is afraid to be in the dark, afraid to put on the light.  She has had these symptoms for a very long time, but has been afraid to

---

[1]Drawing adverse inferences from a claimant's failure to seek medical treatment has also been criticized by the courts particularly with regard to claimants whose claims are based on mental disorders.  Regennitter v. Comm'r of SSA, 166 F.3d 1294, 1299-1300 (9th Cir. 1999); see also Van Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) (finding that "the fact that claimant may be one of millions of people who did not seek treatment for a mental disorder until late in the day is not a substantial basis on which to conclude that" an assessment of the claimant's condition was inaccurate); Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir. 1989) (finding that the appellant "may have failed to seek psychiatric treatment for his mental condition, but it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation").

<u>tell anybody about it.</u>  She is willing to seek
psychiatric help.  Feels that Paxil is not covering the
level of anxiety she is experiencing.

Tr. 210 (emphasis added).

Similarly, the ALJ did not address the evidence in the
record that Plaintiff resisted attempts from her family members
to get her to seek treatment for her mental illness before the
expiration of her insured period.  Teresa Corson, Plaintiff's
daughter-in-law, testified at the hearing that she had known
Plaintiff for 16 years and had observed her abnormal behavior
during the relevant time period.  Tr. 77-85.  She testified that
Plaintiff would call saying "the aliens are back" and that there
were people in the yard watching her.  Tr. 78.  She added that
Plaintiff was afraid of people outside of the family, and that
during visits to her place, she would talk about the "aliens."
Tr. 78, 84.  Teresa Corson explained that Plaintiff would get
angry if anyone mentioned to her that she needed help with these
problems.  Tr. 79.

Ms. Tracy McAllister, Plaintiff's friend of 20 years,
described the marked change in Plaintiff's behavior starting in
1988 in a written statement.  Tr. 170.  Ms. McAllister stated
that at that time:

> I started to notice a change in Brenda, the way she
> spoke to me made me feel like I was a bad person and
> she stopped looking at me when she spoke, always
> looking around or peeking out the window blinds like
> she was trying to catch the person that she says was
> spying on her and snooping around the house.

Tr. 170.  Ms. McAllister further reported that two years later,

in 1990, Plaintiff started claiming, among other things, that

certain people were out to get her, that she had seen UFOs, and

that aliens were giving her a hard time about how she kept her

house.  Tr. 171.  Ms. McAllister relates that when she asked

Plaintiff's husband about her actions, he responded "I know but

she won't go to the doctor's."  Id.

John Corson, Plaintiff's brother in law, wrote a sworn

statement on June 11, 2003, discussing a 1994 incident:

> In June of 1994, my brother Peter brought his wife
> Brenda over to my house.  Peter said Brenda was upset.
> I asked her what was wrong and she told me that she had
> been shot twice in the neck.  I asked her who had shot
> her and she said a motorcycle gang had done it.
>
> I finally convinced her to go to the hospital.  But
> first she wanted some water and then she couldn't
> swallow it because it had poison in it.  Peter and I
> finally got her in the truck and took her to the
> hospital, but she wouldn't stay once we got inside.
>
> She has had these problems of seeing and hearing things
> that are just not real.  As you drive by Pete &
> Brenda's home the lights are usually off and the
> curtains drawn so no one can spy.  Brenda has had these
> problems for a good many years.

14

Tr. 174.  John Corson's wife, Lorraine Corson, corroborated this
story in her statement of June 10, 2003.  Tr. 175.  Lorraine
Corson elaborated that the only person Plaintiff trusted that
night was her husband, John, and that he was able to convince her
that she needed to go to the hospital for help.  <u>Id.</u>  But
Plaintiff refused treatment at the hospital.  <u>Id.</u>

     The Court finds, based on the evidence discussed above, that
the ALJ should have considered the Plaintiff's explanation for
failing to seek or pursue medical treatment, pursuant to SSR 96-
7p, before drawing inferences about the severity of Plaintiff's
symptoms and their functional effects.

     It further appears to the Court that the ALJ may have
misapprehended relevant evidence from Plaintiff's treating
psychiatrist, Dr. Joyce Blood.  The ALJ found the evidence from
Dr. Blood to be "not fully material to the issues herein" because
she first saw Plaintiff four years after her insured status
expired.  Tr. 16.  The ALJ did not expressly acknowledge in her
decision, however, that Dr. Blood's September 3, 2003 assessment
purported to relate to Plaintiff's present condition and as she
was prior to September 1998.  Tr. 257.  It is well recognized
that a "[r]etrospective diagnosis of an impairment, even if

15

uncorroborated by contemporaneous medical records, but corroborated by lay evidence relating back to the claimed period of disability, can support a finding of past impairment." <u>Newell v. Comm'r of SSA</u>, 347 F.3d 541, 547 (3d Cir. 2003) (citing <u>Loza</u>, 219 F.3d at 396; <u>Likes v. Callahan</u>, 112 F.3d 189, 191 (5th Cir. 1997)); <u>see also</u> <u>Jones v. Chater</u>, 65 F.3d 102, 104 (8th Cir. 1995) (finding that an ALJ may consider and reject retrospective diagnoses and evidence proffered by lay witnesses, but must do so for valid reasons). Here, multiple lay witnesses provided evidence regarding the Plaintiff's mental illness with one witness dating the first signs as far back as 1988.

The Court recognizes that the ALJ found that the statements of Plaintiff's sister-in-law, brother-in-law and friend were not reflective of signs and symptoms of an impairment significantly limiting her ability to perform one or more basic work activities for a consecutive period of 12 or more months, Tr. 22, and that Plaintiff had "only recently exhibited severe signs of mental disease." Tr. 21. There is no medical evidence in the record, however, that clarifies the point at which Plaintiff's signs of mental impairment could be considered more than a slight abnormality. The parties dispute whether the ALJ should have

consulted a medical advisor in accordance with SSR 83-20, available at 1983 WL 31249 (S.S.A.).  Plaintiff argues that a medical advisor's opinion was necessary because the evidence regarding Plaintiff's anxiety was ambiguous.  The Commissioner responds that SSR 83-20 is not applicable here because the predicate to the application of the regulation is a finding of disability.  The Court is persuaded by the Plaintiff's argument, however, that courts have not found the application of SSR 83-20 to be so limited, and that the ALJ should have obtained the assistance of a medical advisor in this case.  See e.g., Newell, 347 F.3d at 548 (finding that the ALJ should have applied SSR 83-20 to determine when, if ever, the Plaintiff's liver disease, diabetes, and neuropathy became disabling); Mason v. Apfel, 2 F. Supp. 2d 142, 150 (D. Mass. 1998) (finding that where the onset date must be inferred from the medical and other evidence describing the history and symptomatology of the disease process, the ALJ is required to retain the assistance of a medical advisor pursuant to SSR 83-20).

The Court further notes that the ALJ misstated the evidence in finding that Plaintiff's report of being very fearful of going into public places was not corroborated by reports to Dr. Blood

17

or her counselor.  Tr. 22.  This finding is plainly contradicted by Dr. Blood's July 31, 2002 report that:

> She is very nervous being around people.  She cannot stay in a restaurant for fear that others are talking about her.  She feels very paranoid.  She has ideas of reference, seeing people on the street and in some way feeling like they are there for a specific reason and want to hurt her.

Tr. 225.  Dr. Blood later found, as the ALJ noted in her decision, that Plaintiff had high anxiety and a condition of agoraphobia.

An ALJ's findings of fact are not conclusive if they are "derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts."  <u>Nguyen v. Chater</u>, 172 F.3d at 35. Here, the ALJ misapplied the law for determining the severity of Plaintiff's mental impairments at Step 2 of the sequential evaluation by not using the proper standard, and ignored evidence that could be found to meet the Plaintiff's burden to show that her mental impairments were more than a slight abnormality with more than a minimal effect on her ability to do basic work activities.  The Court finds that a remand for a reconsideration of the severity of Plaintiff's mental impairments is warranted.

B.    <u>The ALJ's Finding That The Plaintiff Does Not Have A Medically Determinable Back Impairment Is Not Supported By Substantial Evidence</u>

18

The ALJ found that "the record does not show neurological abnormalities in connection with her complaints of back pain and does not show examinations where she has any signs indicative of a musculoskeletal or other disorder of the spine."  Tr. 21.  In so finding, the ALJ disregarded the opinion of consulting physician, Dr. Patrician Skidmore.  As Dr. Skidmore recognized, Plaintiff has a tethered spinal cord, a small defect at L3-4, and absent Soleus H reflexes suggestive of early pathology at some point along the course of the S1 nerve roots bilaterally.  Tr. 234.  Dr. Skidmore found that in light of these abnormalities Plaintiff's complaints of pain were credible.  The ALJ stated that she did not give Dr. Skidmore's opinion "much weight" since the medical evidence of record did not support a medically determinable impairment of the back.  However, the ALJ did not cite any contrary medical opinion.  It appears that the ALJ substituted her own lay opinion of the medical evidence.

The ALJ found, based on her review of the results of Plaintiff's March 22, 1994 electromyogram report, that Plaintiff was able to do basic work activities, and further found that Plaintiff's symptoms "were not so constant so as to significantly interfere with her performance of basic work activities."  Tr.

19.  As discussed with regard to the determination of the severity of Plaintiff's mental impairments, however, this finding appears to reflect the use of the wrong standard for determining whether Plaintiff's physical impairments were severe.  The ALJ did not reference the requirement that in order to be found "not severe" the claimant's impairment(s) must be no more than a slight abnormality that has only a minimal affect of the ability to do basic work activities.

The Court finds that the ALJ's finding regarding the Plaintiff's alleged back impairments is not conclusive because she improperly judged a matter that should have been entrusted to a medical expert.  In addition, this case should be remanded for reconsideration of whether Plaintiff met her de minimis burden to show severity at Step 2 of the sequential evaluation particularly since Dr. Skidmore's opinion supports a finding that Plaintiff could not perform her past relevant work.  See McDonald, 795 F.2d at 1125 (finding that denial of benefits is not appropriate at the severe stage if evidence shows that a claimant cannot perform his or her past relevant work).

In sum, the Court finds that the ALJ improperly relied upon her own lay opinion in determining that Plaintiff did not have a

medically determinable impairment of the back.  The Court further
finds that the ALJ did not properly follow the sequential
evaluation for deciding Plaintiff's disability claim because the
ALJ misapplied the law at Step 2 of the sequential evaluation
with regard to consideration of Plaintiff's physical impairments.
A remand for further consideration of Plaintiff's physical
impairments is warranted.

Conclusion

While it is certainly possible that after reconsideration
the Plaintiff will again be found to not be disabled within the
meaning of the Act, the Court cannot find that the Commissioner's
decision is supported by substantial evidence at this juncture.
Accordingly, for the reasons set forth above, I recommend that
the Plaintiff's Motion for Order Reversing the Decision of the
Commissioner (document no. 7) be granted.  I further recommend
that the Commissioner's Motion for Order Affirming the Decision
of the Commissioner (document no. 8) be denied.  I recommend that
this matter be remanded for further proceedings.

Any objections to this Report and Recommendation must be
filed within ten (10) days of receipt of this notice.  Failure to
file objections within the specified time waives the right to

appeal the district court's order.  See <u>Unauthorized Practice of</u> <u>Law Comm. v. Gordon</u>, 979 F.2d 11, 13-14 (1st Cir. 1992); <u>United</u> <u>States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986).

_____
James R. Muirhead
United States Magistrate Judge

Date: May 27, 2005

cc:  Raymond J. Kelly, Esq.
     David L. Broderick, Esq.